**H. F. BANKER, Appellant,**

**v.**

**JEFFERSON COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NO. ONE, Appellee.**

**No. 4963.**

Court of Civil Appeals of Texas.

Beaumont.

March 17, 1955.

Rehearing Denied April 6, 1955.

Rutan & Phares, Pt. Arthur, for appellant.

Earl Black, Pt. Arthur, for appellee.

ANDERSON, Justice.

The plaintiff seeks primarily to recover damages for an alleged breach of contract. Alternatively, he seeks to recover for an alleged conversion of certain water lines. A so-called plea in abatement, heard on an agreed statement of facts, was sustained and the suit dismissed. The appeal has been perfected from the order of dismissal.

Under date of May 22, 1947, the plaintiff, H. F. Banker, and the defendant, Jefferson County Water Control and Improvement District No. One, entered into a written contract by the terms of which Banker, as party of the first part, was to install, at his own expense, along a prescribed route, a water line from the south boundary of the District to a point inside Lyndale Addition and thence west across the north end of said Addition, and the Water Control and Improvement District, as party of the second part, was to take charge of the line and supply water through it to persons desiring it. Among other provisions, the contract contained the following:

"It is agreed by and between the parties that said line and any extension thereof will remain the property of first party subject to the terms and conditions of this contract and the said District will never be called on to purchase, condemn or otherwise acquire the same regardless of whether or not the area served by said line shall ever become a part of said District. Provided, however, the District shall operate the same and make all necessary repairs thereon at its own expense; and, provided, further, that all income and revenue derived from the sale and distribution of water through said system shall be and remain the property of the District, free and clear of all claims of First Party.

"In consideration of the mutual promises and covenants on the part of each party to be kept and performed, and particularly for and in consideration of the District furnishing water to the purchasers, owners, and residents of the lots in said Lyndale Addition, First Party hereby and by these presents does let, demise and lease unto the District all of the said water lines hereinabove mentioned, together with all extensions thereof for and in perpetuity, or so long as any property owners or residents within said Lyndale Addition shall require water connections.

"The District shall use said line so demised herein for the sale of water to the residents or property owners in said Lyndale Addition or to residents or property owners abutting any extension of said line.

"The District shall have the exclusive right to tap said line or any extension thereof and to place meters, valves, cutoffs and service lines thereon and the said meters, valves, cutoffs and service mains so installed by the District shall remain the property of the District providing said District shall under no circumstances have the right to 'tap' any water line or extension outside of Lyndale Addition, or inside of Lyndale Addition to serve any prospective users whose property is not in Lyndale Addition, until and unless said District shall be authorized to do so in writing by said First Party, his heirs, assigns, or legal representatives.

"The District agrees to furnish water to the users at its regularly published 'out of district rates' and no discrimination will be made against any user in said Lyndale Addition or elsewhere upon any extension of said line.

"It is agreed by and between the parties that any extension of the water system outside of Lyndale Addition shall be made by the said First Party or under his direction only after procuring the written consent of the District and all such extensions shall be made under the supervision of the District and in compliance with the sanitary code and the plumbing code of said District."

After the contract was entered into, Mr. Banker procured a private easement across the land lying between the south boundary of the Water Control and Improvement District and the north boundary of Lyndale Addition, and installed the water line as agreed upon, using six-inch cast iron pipe for the purpose. He then installed smaller (two-inch) lines by all lots in both Lyndale Addition and Fairdale Addition—the latter being an Addition lying just west of Lyndale Addition—and connected these smaller lines to the larger one first mentioned. When installation had been completed, the Water Control and Improvement District assumed control of said lines and commenced to supply water through them to its customers; and it has ever since used them as a part of its water distributing system.

At the time it first assumed control of the lines and commenced using them, the Water Control and Improvement District was acting altogether under its contract with Mr. Banker, because at that time none of the lines in question nor any of the area served by them was located within the boundaries of the District. However, subsequently, on December 29, 1951, the District annexed the entire area. Alleged breaches of contract occurring both before and after the annexation are involved.

The proviso of the contract which is alleged to have been breached is the following: "* * * providing said District shall under no circumstances have the right to 'tap' any water line or extension outside of Lyndale Addition, or inside of Lyndale Addition to serve any prospective users whose property is not in Lyndale Addition, until and unless said District shall be authorized to do so in writing by said First Party, his heirs, assigns, or legal representatives."

Without having been authorized by Mr. Banker to do so, the Water Control and Improvement District connected service

lines to the distribution lines for a number of new customers in Fairhaven Addition.

As the price for his consent for new connections to be made in Fairhaven Addition Mr. Banker had expected to collect from each new customer a pro rated part of the expense he himself had incurred in installing the distribution lines. He alleges that by making the connections without his authorization the defendant deprived him of any chance to collect the amounts he would have collected otherwise, and he seeks to recover of the defendant the aggregate of those amounts as damages.

■■ We think the trial court committed no error in dismissing plaintiff's suit. There can be no recovery for breach of contract, because, for reasons presently to be stated, the provision of the contract which is claimed to have been breached is contrary to public policy and void. And there can be no alternative recovery as for conversion, because, even if the water lines be considered as personalty and as being owned by Mr. Banker (matters on which we express no opinion), plaintiff's petition shows on its face that such possession as the defendant has had of the lines, and such control or dominion as it has exercised over them, has been with plaintiff's consent and approval. There can be no conversion where the owner or person entitled to possession has expressly or impliedly assented to the taking or disposition of property by the one sought to be held liable. Terry v. Witherspoon, Tex.Civ. App., 255 S.W. 471, 473, affirmed, Tex. Com.App., 267 S.W. 973; Gulf, C. & S. F. R. Co. v. Pratt, Tex.Civ.App., 183 S.W. 103, error refused; 42 Tex.Jur. 512, Trover and Conversion, Sec. 5.

The provision of the contract which is claimed to have been breached is contrary to public policy and void because it endeavors to restrict the Water Control and Improvement District, a governmental agency, in the exercise of its and the State's police powers and governmental functions.

The District was organized under and by authority of Section 59, Article 16, of the Constitution, Vernon's Ann.St. and Articles 7880–1 to 7880–147z, Vernon's Texas Civil Statutes. The constitution itself provides, art. 16, Sec. 59a: "The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, * * * and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto." It also authorizes the creation of conservation and reclamation districts for the purpose of accomplishing the contemplated conservation, development, and preservation of said natural resources, art. 16, Sec. 59(b), and provides that districts so created "shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law."

■ Districts, including Water Control and Improvement Districts, created by or pursuant to statutes enacted under the aforesaid provisions of the constitution have been consistently recognized by our courts as being political subdivisions of the State which perform governmental functions and which stand upon the same footing as counties and other political subdivisions established by law. Willacy County Water Control and Improvement Dist. No. 1 v. Abendroth, 142 Tex. 320, 177 S.W.2d 936, and the cases there cited.

■ In discharging their governmental functions, such districts, as agents of the State, are essentially exercising the State's and their own police power, which has been defined as "a grant of authority from the people to their governmental agents for the protection of the health, the safety, the comfort and the welfare of the public." Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 515, 19 A.L.R. 1387. The pro-

vision of the constitution with which we are dealing is clearly a grant from the people to their governmental agents of the kind of authority contemplated by the foregoing definition, because the conservation, development, and preservation of the State's natural resources—acts which are unquestionably calculated to protect and promote the health, safety, comfort and welfare of the public—are expressly declared by the provision itself to be "public rights and duties", and the Legislature is commanded or directed to enact laws looking to the protection of those rights and to the discharge of those duties.

The police power of a government or of a governmental agency can never be abdicated or bargained away, and is inalienable even by express grant. City of New Braunfels v. Waldschmidt, 109 Tex. 302, 207 S.W. 303; Arneson v. Shary, Tex. Civ.App., 32 S.W.2d 907; 9 Tex.Jur. 502, Constitutional Law, Sec. 74. The same is equally true, it seems, of any truly governmental power or function. City of Crosbyton v. Texas-New Mexico Utilities Co., Tex.Civ.App., 157 S.W.2d 418, error refused; Bowers v. City of Taylor, Com. App., 16 S.W.2d 520; State ex rel. City of Jasper v. Gulf States Utilities Co., 144 Tex. 184, 189 S.W.2d 693, 698; City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S.W. 143; City of Beaumont v. Calder Place Corporation, 143 Tex. 244, 183 S.W.2d 713, 716.

As a Water Control and Improvement District, the defendant is authorized by statute to control, store, preserve and distribute "its waters and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes," to "construct all works and improvements necessary * * * to supply water for municipal uses, domestic uses, power and commercial purposes, and all other beneficial uses", and to "sell any surplus water that it may have to lands in the same vicinity * * * for the purpose of irrigation, domestic or commercial uses". Articles 7880-3, 7880-48, 7880-138, Vernon's Texas Civil Statutes.

It is a governmental function of such districts, we think, and one involving exercise of the police power, to determine whether or not they have or will have surplus water for sale, the people and lands most in need of and most entitled to any such surplus, and the people to whom and the conditions upon which any such surplus will be sold. It follows, therefore, that the duty and right to make these and similar decisions cannot be ceded or bartered or contracted away. We think the provision of the contract the plaintiff seeks to enforce in the case at bar, the effect of which would be to place it within the power of the plaintiff to determine whether the defendant may supply water to certain would-be users, is in conflict with the stated fundamental principles of law, and for such reason is illegal and void.

The defendant did not in its so-called plea in abatement plead this illegality, but pleaded instead that the contract was superseded by operation of law when the Water Control and Improvement District annexed the territory that included the water lines. However, the illegal nature of the portion of the contract sought to be enforced was apparent on the face of plaintiff's petition, and it was therefore not necessary, we think, that the defendant specially plead it before the trial court was at liberty to take cognizance of it as a basis for dismissing the suit. This was unquestionably the rule prior to adoption of our Texas Rules of Civil Procedure. Texas & P. Coal Co. v. Lawson, 89 Tex. 394, 32 S.W. 871, and 89 Tex. 394, 34 S.W. 919; Burt v. St. Paul Mut. Hail & Cyclone Ins. Co., Tex. Civ.App., 264 S.W. 686; Montgomery Ward & Co. v. Lusk, Civ.App., 52 S.W.2d 1110, error refused. Rule 94, T.R.C.P., it is true, now lists illegality as a matter to be affirmatively pleaded if it is to avail the party asserting it; but, as we interpret the decisions in which the rule in this respect has been construed, in those instances where a party's cause of action or defense must necessarily rest upon the illegal phase of the transaction or contract, and the illegality of the transaction or contract is affirmatively disclosed on the face of such

party's pleading, it is still not necessary that the opposing party specially and affirmatively plead it in order to be entitled to take advantage of it. Reid v. Associated Employers Lloyds, Tex.Civ.App., 164 S.W.2d 584, error refused; Federal Underwriters Exchange v. Craighead, Tex.Civ.App., 168 S.W.2d 699, er. ref. e. m.; Continental Fire & Cas. Ins. Corp. v. American Mfg. Co., Tex.Civ.App., 206 S.W.2d 669; Smothers v. Gawlick, Tex.Civ.App., 214 S.W.2d 894, er. ref. n. r. e.; Texas Civil Practice (McDonald), Vol. 2, sec. 7.39. In the case first cited it was said [164 S.W.2d 586]: "If there existed in the transaction some character of illegality which would constitute a defense to the suit, the burden was upon the defendant to plead and prove it, unless it was such as would necessarily appear from plaintiff's presentation of his case." And in Continental Fire & Cas. Ins. Corp. v. American Mfg. Co. [206 S.W. 2d 672] it was said: "It may also be observed that if plaintiff's petition affirmatively and conclusively shows upon its face the illegality of the transaction upon which suit is based, it becomes a judicial admission and defendant can rely upon it."

For yet another reason we think it immaterial in this instance that the defendant failed to plead the illegality of the contract. The so-called plea in abatement was, as aforesaid, heard on an agreed statement of facts. The parties were obviously seeking a ruling on whether the plaintiff had pleaded a cause of action. The trial court passed on the question and held that plaintiff's petition stated no cause of action. The result, therefore, is not materially different from what it would have been if the case on its merits had been submitted on an agreed statement of facts; and in the latter situation it seems to be well established that the pleadings of the parties are not of material consequence. Rule 263, T.R.C.P.; Scott v. Slaughter, 97 Tex. 244, 77 S.W. 949; Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837; Patton v. Wilson, Tex.Civ.App., 220 S.W.2d 184.

The procedure adopted by the parties to test the sufficiency of the plaintiff's petition was similar to that which formerly prevailed when general demurrers were in use. The suit was dismissed despite the fact that alleged breaches of the contract occurring before the boundaries of the District were expanded were pleaded, and it is therefore to be inferred that the trial court considered the portion of the contract declared upon void from its inception. We think that, all circumstances considered, the court was at liberty to pass upon the question. However, the procedure followed in this instance, smacking as it does of. the general demurrer which has been eliminated from our procedure, is not to be encouraged.

The views we have expressed render it unnecessary that we pass upon the question of the property rights of the parties in the water lines in question, or upon the question of whether the annexation affected the rights of the parties in any particular.

For the reasons assigned, the judgment of the trial court is affirmed.