NUMBER 13-02-077-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
___________________________________________________________________

CITY OF CORPUS CHRISTI,                                               Appellant,

v.

GEORGE KINES TAYLOR AND 
SANDRA G. TAYLOR, AS 
INDEPENDENT COEXECUTORS 
OF THE ESTATE OF FAY K. TAYLOR, 
JENNIFER TAYLOR LABRIE, AND 
GEORGE KELLEY TAYLOR,                                                Appellees.
___________________________________________________________________

On appeal from the County Court at Law No. 3
of Nueces County, Texas.
__________________________________________________________________

O P I N I O N

Before Chief Justice Valdez and Justices Rodriguez and Dorsey



 Opinion by Justice Rodriguez
         Appellees, George Kines Taylor and Sandra G. Taylor, as independent
coexecutors of the estate of Fay K. Taylor,


 Jennifer Taylor Labrie, and George Kelley
Taylor (Taylors), sued appellant, the City of Corpus Christi (City), seeking a declaration
that restrictions against building on the real property at issue were void or
unenforceable. The Taylors also sought money damages. After a bench trial, the
court entered judgment in favor of the Taylors, holding the contract between George
and Fay Taylor and the City, signed November 27, 1974, and the deed restrictions in
the contract were terminated. The judgment released the Taylors from the restrictions. 
The trial court awarded attorney's fees to the Taylors pursuant to the Declaratory
Judgment Act. The court did not award damages.
         By twelve issues, the City challenges the trial court's findings of fact and
conclusions of law contending the evidence is factually and legally insufficient to
support the judgment. Specifically, the City complains that the court erred in its
declaratory judgment rulings because: (1) the contract and restrictions are not illegal
and void; (2) the contract does not contemplate a continuing performance which is
indefinite in duration and is not terminable at will; (3) there is no violation of public
policy against alienation, and the property is usable; (4) the City did not violate article
5421(c)-12, section 1 of the revised civil statutes by selling or exchanging land
without public notice and public sale; (5) there was no anticipated breach, deceit,
fraud, fraudulent inducement or unconscionable conduct; (6) there is no entitlement
to attorney's fees; (7) the affirmative defenses of limitations, sovereign immunity,
estoppel, laches, and estoppel by deed or contract preclude recovery; (8) the acts of
the City are validated by statute; (9) it is not a taking or an unjust enrichment claim;
and (10) the restrictive covenants cannot be unilaterally terminated. By one cross-issue, the Taylors assert the trial court should have awarded damages. We affirm.
I. Background
         In the early 1970s, as part of a federally-funded program aimed at having and
maintaining a series of open spaces and parks along Ocean Drive, the City sought to
obtain George and Fay Taylor's undeveloped property bordering Corpus Christi Bay
(Ocean Drive property). This property was to become part of an area now known as
Ropes Park. George and Fay Taylor opposed the City's efforts to acquire their
property. After three years of unsuccessful negotiations, the City began condemnation
proceedings on the Ocean Drive property. The proceedings were hotly contested. In
December 1973, following a hearing on the matter, appointed commissioners awarded
the Taylors a total $39,275.00 for the Ocean Drive property. Both the City and
George and Fay Taylor appealed the commissioners' award. A jury trial resulted in a
$27,600.00 judgment to George and Fay Taylor for the property. They appealed that
judgment.
         In November 1974, George and Fay Taylor and the City entered into an
agreement


 (1974 Agreement) that settled the condemnation proceeding. The 1974
Agreement was approved by the Corpus Christi City Council. Pursuant to the 1974
Agreement the following documents were executed and filed of record: (1) a
document setting out covenants restricting building and certain vegetation on the
Ocean Drive property; (2) a deed conveying to the City a one-half interest in property
described as two lots on Water Street, presently the site of the Selena Auditorium
(Water Street property); and (3) a quitclaim deed from the City to George and Fay
Taylor for the Ocean Drive property.
         The document restricting building and vegetation on the Ocean Drive property
provided "[n]o building, fence or other structure shall be erected, placed or permitted
to remain on said property," and "vegetation . . . will be planted and maintained in
such a manner that the driver of an automobile . . . will be able to view Corpus Christi
Bay over at least fifty (50%) of the property's Ocean Drive frontage." It also stated
that, 
[t]hese restrictions and covenants are hereby declared to be covenants
running with the land forever and shall be binding upon all persons
acquiring the above-described property whether by descent, devise,
purchase or otherwise, and any person by the acceptance of title to said
property or any part thereof shall thereby agree and covenant to abide by
and fully perform the foregoing restrictions and covenants.
 
This restrictive covenant document further provided that if any person violated any of
the restrictions and covenants, the City could "prosecute proceedings at law or in
equity against the person violating or attempting to violate any such restriction and
covenant . . . ."
         The second document required by the 1974 Agreement was a deed conveying
a one-half interest in the Water Street property from George and Fay Taylor to the
City. This conveyance was subject to the covenant that the City "shall never file or
prosecute any suit to condemn" the Ocean Drive property. The conveyance also
provided that should the City violate or not observe this covenant, the City agreed to
pay George and Fay Taylor, "their heirs or assigns, in cash, the same amount paid to
acquire the other one half (½) interest in" the Water Street property. The third
document was a quitclaim deed from the City to George and Fay Taylor for the Ocean
Drive property.
         After the parties entered into the 1974 Agreement, the appeal of the
condemnation proceeding was dismissed. The Ocean Drive property was taken out
of the park project and was never condemned.
         On August 20, 1997, Sandra G. Taylor and George Kines Taylor, independent
coexecutors of the estate of Fay Taylor, signed an affidavit terminating and releasing
restrictions on the Ocean Drive property. In December 1998, the Taylors filed their
original petition and request for declaratory relief. The trial court's judgment
terminated the 1974 Agreement and the restrictions contained therein, and released
the Taylors from the restrictions. The trial court entered findings of fact and
conclusions of law and later, at the request of the Taylors and the City, entered
additional findings of fact and conclusions of law. The City appeals from the trial
court's judgment.
II. Standard of Review
A. Findings of Fact
         Findings of fact in a case tried to the court have the same force and dignity as
a jury's verdict upon jury questions. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex.
1994); Taiwan Shrimp Farm Vill. Ass'n v. U.S.A. Shrimp Farm Dev., Inc., 915 S.W.2d
61, 70 (Tex. App.–Corpus Christi 1996, writ denied). Findings of fact are not,
however, conclusive when a complete reporter's record appears in the record, as in
this case. Tucker v. Tucker, 908 S.W.2d 530, 532 (Tex. App.–San Antonio 1995,
writ denied). When challenged, such trial court's findings of fact are reviewed for legal
and factual sufficiency of the evidence by the same standards applied when reviewing
evidence supporting jury findings. Ortiz v. Jones, 917 S.W.2d. 770, 772 (Tex. 1996)
(per curiam); Catalina, 881 S.W.2d at 297; Taiwan Shrimp Farm Vill., 915 S.W.2d at
70; see In re Doe, 19 S.W.3d 249, 253 (Tex. 2000). If a reporter's record is filed,
unchallenged findings of fact are binding on the appellate court unless the contrary is
established as a matter of law, or if there is no evidence to support the finding. See
McGalliard v. Kuhlmann, 722 S.W.2d 694, 696-97 (Tex. 1986).
 
1. Legal Sufficiency
         Legal sufficiency issues are called "no evidence" issues or "matter of law"
issues, depending upon whether the complaining party had the burden of proof. Raw
Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 275 (Tex.
App.–Amarillo 1988, writ denied). Challenges to the legal sufficiency of the evidence
must be sustained if the record reflects one of the following:
(1) a complete absence of evidence of a vital fact; (2) the court is barred
by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact; (3) the evidence offered to prove a vital fact
is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of [a] vital fact.

Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998). Under a
legal-sufficiency review we must disregard all evidence and inferences contrary to the
findings in the case. Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002).
2. Factual Sufficiency
         When reviewing a challenge to the factual sufficiency of the evidence, we
consider all of the evidence. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445
(Tex. 1989) (per curiam). "Factual sufficiency [issues] are designated as 'insufficient
evidence [issues]' or 'great weight and preponderance evidence [issues],' depending
upon whether the complaining party had the burden of proof." Maxus, 766 S.W.2d
at 275; see Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam)
(when complaining party did bear burden of proof at trial, he must demonstrate on
appeal that adverse finding is against great weight and preponderance of evidence);
Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983) (if complaining party did not
have burden of proof at trial, must demonstrate there is insufficient evidence to
support adverse finding); Hickey v. Couchman, 797 S.W.2d 103, 109 (Tex.
App.–Corpus Christi 1990, writ denied) (same). 
 
B. Conclusions of Law
         The trial court's conclusions of law are not binding upon an appellate court;
instead, the appellate court is free to draw its own legal conclusions. Aguero v.
Ramirez, 70 S.W.3d 372, 373 (Tex. App.–Corpus Christi 2002, pet. denied). We
review the trial court's conclusions of law de novo to determine whether the trial court
correctly drew the legal conclusions from the facts. State v. Heal, 917 S.W.2d 6, 9
(Tex. 1996); Aguero, 70 S.W.3d at 373; Dallas Morning News v. Bd. of Trs., 861
S.W.2d 532, 536 (Tex. App.–Dallas 1993, writ denied).
         Conclusions of law will not be reversed unless they are erroneous as a matter
of law. Stable Energy, L.P. v. Newbury, 999 S.W.2d 538, 547 (Tex. App.–Austin
1999, pet. denied). Conclusions of law will be upheld on appeal if the judgment can
be sustained on any legal theory supported by the evidence. Mack v. Landry, 22
S.W.3d 524, 528 (Tex. App.–Houston [14th Dist.] 2000, no pet.); Spiller v. Spiller,
901 S.W.2d 553, 556 (Tex. App.–San Antonio 1995, writ denied). Furthermore,
correct conclusions of law will not require reversal if the controlling finding of facts will
support a correct legal theory. Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A.
de C.V., 49 S.W.3d 347, 351 (Tex. 2001); Aguero, 70 S.W.3d at 373.
III. Legality of 1974 Agreement
         By its first issue, the City contends the evidence is legally and factually
insufficient to prove that the 1974 Agreement was illegal. The City specifically
complains of the following findings of fact:
4.Under the terms of the Contract between the City . . . and George
and Fay Taylor dated November 27, 1974, the City agreed to
"never file or prosecute any suit to condemn the [Ocean Drive]
Property;"
 
5.In carrying out the Contract, the parties contemporaneously
executed a restrictive covenant in connection with the [Ocean
Drive] Property . . . ; a conveyance of their undivided ½ interest
in [the Water Street property], subject to the proviso that the
[Ocean Drive] Property would never be condemned or subject to
condemnation; and finally, a Quitclaim Deed executed by the City
Manager, whereby the City quitclaimed all right, title and interest
to the [Ocean Drive] Property to [George and Fay Taylor]; and

* * *
 
8.There was no consideration for the 1974 Agreement between the
City of Corpus Christi and George [and Fay]Taylor . . . .

The City further asserts that the following conclusions of law were made in error:
 
3.[Same as Finding 4 above];
 
4.[Same as Finding 5 above]; and

* * *
 
5.Under the Contract entered into between the City . . . , a
municipal corporation, and George Taylor and wife, Fay Taylor,
which was incorporated into and adopted by virtue of Ordinance
No. 12304 dated October 9, 1974, the provision never to file or
prosecute any suit to condemn the [Ocean Drive] property is a
restriction against free exercise of governmental powers.




         A city may not enter into a contractual provision which limits its free exercise
of governmental and police powers. See Clear Lake City Water Auth. v. Clear Lake
Utils. Co., 549 S.W.2d 385, 391 (Tex. 1977); Banker v. Jefferson County Water
Control and Improvement Dist. No. One, 277 S.W.2d 130, 134 (Tex. Civ.
App.–Beaumont 1955, writ ref'd n.r.e.). The power of eminent domain or
condemnation is a governmental function which cannot be delegated. See Burch v.
City of San Antonio, 518 S.W.2d 540, 545 (Tex. 1975). A contract restricting a
city's freedom to choose when to initiate condemnation proceedings is a contract in
derogation of such power. See Clear Lake, 549 S.W.2d at 391. Therefore, such
contractual restriction is contrary to public policy and, thus, illegal and void. Banker,
277 S.W.2d at 133-34.
         The City agrees that it cannot legally agree never to condemn because such is
in derogation of its governmental powers. Nonetheless, the City argues that all
provisions of the 1974 Agreement should be read together. See Baty v. Protech Ins. 
Agency, 63 S.W.3d 841, 848 (Tex. App.–Houston [14th Dist.] 2001, pet. denied)
courts to construe particular language by reading contract as whole, not by isolating
certain phrases); Hofland v. Firemans Fund Inc. Co., 907 S.W.2d 597, 599 (Tex.
App.–Corpus Christi 1995, no writ) (courts seek to harmonize and give effect to all
contract provisions so that none are meaningless). Specifically, the City urges this
Court to read and interpret the restriction on the City's exercise of eminent domain in
light of the following clause:
In case of and upon any violation or non-observance of this section
[restricting condemnation], [the] City agrees to pay [George Taylor and
Fay Taylor], their heirs or assigns, in cash, the same amount paid to
acquire the other one half (½) interest in [the Water Street property],
whether said property be acquired by negotiated sale or by
condemnation.




The City contends this "payment" clause acts as a qualifier to the restriction not to
condemn. It argues that, as a matter of law, legal consideration was exchanged
because the contract and provision referenced and the ordinance adopting them were
not illegal.
         The City relies on Wicks v. Comves, 110 Tex. 532, 221 S.W. 938, 939 (1920),
for the proposition that when certain portions of a contract are invalid, the court is to
ignore them if possible, and enforce as much of the remainder of the contract as is
lawful. See id. at 939. In Wicks, the lessor agreed to perform two acts: first, to
lease a fruit stand on and over the sidewalk for stipulated monthly rentals; and second,
to lease the stands and fixtures inside for stipulated monthly rentals if the use of the
sidewalk was terminated because it was determined to be illegal. Id. at 938. The
contract in Wicks did not contemplate doing anything that violated the law, but rather
it provided for doing only that which was lawful. Id. The two acts in Wicks could be
readily separated, one to be performed for a separate consideration upon the failure of
another found to be illegal. Id. at 939.
         In the present case, the 1974 Agreement and supporting documents did not set
forth alternative, severable provisions. The City agreed not to condemn the Ocean
Drive property, but if it did condemn the property, the City agreed to pay a
predetermined amount of money to George and Fay Taylor, their heirs or assigns. We
cannot conclude these acts are analogous to the separate and distinct acts described
in Wicks. Only when the City violated or refused to abide by its agreement not to
condemn would the payment clause become effective.
         Moreover, unlike the lessor in Wicks, the City agreed to perform an illegal act. 
The 1974 Agreement provided for doing something that was unlawful; the act of
never condemning the Ocean Drive property. Having concluded the first clause which
restricts the City's exercise of eminent domain is illegal, and thus, void, we must
conclude the second clause has no effect. See Ashley v. Edwards, 626 S.W.2d 107,
111 (Tex. App.–Houston [14th Dist.] 1981, no writ) (if contract is unambiguous on
its face, court cannot depart from terms of contract to make legal what parties have
made unlawful). Therefore, this argument fails.
         The City also argues that even if the provision not to condemn is held to be
invalid, such does not invalidate the remaining provisions. The City urges that the
remaining contractual provisions, including the conveyance of one-half interest in the
Water Street property to the City, are separable and independent contractual
provisions and should be upheld. See, e.g., Clear Lake, 549 S.W.2d at 390-92 (court
did not invalidate entire contract, but construed remaining portions of contract in such
a way so as to make it legal); Banker, 277 S.W.2d at 134 (court held exclusivity
provision invalid, but did not provide district had to repay developer). We find it
unnecessary, however, to reach this argument. The judgment in this case declared the
1974 Agreement terminated. It also terminated the deed restrictions on the Ocean
Drive property and released the Taylors from those restrictions. It did nothing more. 
Thus, arguments related to other contractual provisions are not before us in this
appeal.
         Disregarding all evidence and inferences contrary to the findings, we conclude
more than a scintilla of evidence exists to support findings of fact 4, 5, and 8, that the
City agreed to "never file or prosecute any suit to condemn the [Ocean Drive]
Property," that the Water Street property was conveyed "subject to the proviso that
the [Ocean Drive] Property would never be condemned or subject to condemnation,"
and that there was no legal consideration for the agreement. Thus, the City's legal
sufficiency challenge fails as to these findings. See Maxus, 766 S.W.2d at 275;
Formosa Plastics Corp., USA v. Presidio Eng'rs and Contractors, Inc., 960 S.W.2d 41,
48 (Tex. 1995). Furthermore, reviewing the entire record, we conclude there is
sufficient evidence to support the adverse findings; thus, the City's factual sufficiency
challenge also fails. Maxus, 766 S.W.2d at 275. Moreover, evaluating the trial
court's conclusions of law 3 and 4 which parallel findings of fact 4 and 5, we
conclude the trial court correctly drew the legal conclusions from the facts. See Dallas
Morning News, 861 S.W.2d at 536. We also conclude that conclusion of law 5,
which provides the provision never to file or prosecute any suit to condemn the Ocean
Drive property, is a restriction against free exercise of governmental powers and is not
erroneous as a matter of law. See Stable Energy, 999 S.W.2d at 547. Accordingly,
the City's first issue is overruled.
         Having concluded the covenant restricting the City's power of eminent domain
is contrary to public policy and void, and, thus, illegal, see Banker, 277 S.W.2d at
133-34, we now address whether the 1974 Agreement was continuous and
terminable at will.
IV. Continuous Performance Terminable at Will
         By its second issue, the City challenges conclusion of law 6 which provides that
"[t]he Contract entered into between the City . . . and George Taylor and wife, Fay
Taylor . . . contemplates a continuing performance which is indefinite in duration."


 
The City argues that, as a matter of law, the contract does not contemplate a
continuing performance, is not indefinite in duration, and is not terminable at will. It
contends, as a matter of law, the contract is not executory but is a completed
contract: the deeds were signed, the covenant was placed, and the agreement did not
include further actions on the part of the Taylors. The City thus contends the Taylors
had no basis to unilaterally terminate the contract and restrictions.
         The City cites authority for several general propositions of law related to
restrictions and covenants. See Munson v. Milton, 948 S.W.2d 813, 817 (Tex.
App.–San Antonio 1997, pet. denied) (property owners permitted to create binding
permanent restrictions on property if the restrictions are confined to a lawful purpose
and are reasonable); Cornett v. City of Houston, 404 S.W.2d 602, 605 (Tex. Civ.
App.–Houston 1964, no writ) (covenants and restrictions are not violation of rule
against perpetuities because rule merely relates to remote vesting of estate); Selected
Lands v. Speich, 702 S.W.2d 197, 198 (Tex. Civ. App.–Houston [14th Dist.] 1985,
no writ) (restrictive covenants created by grant, as covenant running with land; mutual
agreement; implication, as reciprocal negative easement; and a general plan of
development, as an equitable servitude); Thomson v. Dozier, 168 S.W.2d 319, 322
(Tex. Civ. App.–El Paso 1942, writ ref'd w.o.m.) (covenant with no duration stated
does not impair its validity); Inwood N. Home Owners Ass'n v. Harris, 736 S.W.2d
632, 635 (Tex. 1987) (covenant runs with land when (1) it touches and concerns
land, (2) it relates to thing in existence or specifically bind parties and assigns, (3) it
is intended by original parties to run with land, and (4) successor to burden has
notice). Although the City sets out these general propositions of law, it does not
provide clear and concise arguments with appropriate citations to authorities and to
the record for its contentions. See Tex. R. App. P. 38.1(h).
         Moreover, in this instance, neither the 1974 Agreement nor the supporting
documentation sets out a duration for either the restrictions on the land or the City's
covenant not to condemn. Furthermore, while the filing of the restrictions had been
completed, the restrictions imposed a continuing duty on the Taylors not to erect
buildings, fences, or other structures or to permit them to remain. Similarly, the
restrictions imposed a continuing commitment on the Taylors to maintain vegetation
within certain limits. The agreement was entered into in 1974. Trial testimony
established that the restrictive covenants were still being followed and that the Taylors
continued to pay taxes on the property. Moreover, the agreement also set out the
City's continuing obligation not to condemn, an obligation we have determined to be
unlawful and which is not supported by the proposition of law cited by the City in
Munson. See Munson, 948 S.W.2d at 817 (binding permanent restrictions permitted
if restrictions are confined to lawful purpose and are reasonable).
         Thus, evaluating the trial court's conclusion of law 6 de novo, we conclude the
trial court correctly drew, from the facts of the case, its legal conclusion that the
contract contemplates a continuing performance which is indefinite in duration. See
Dallas Morning News, 861 S.W.2d at 536. Its conclusion is not erroneous as a matter
of law. See Stable Energy, 999 S.W.2d at 547.
         Having so concluded, the controlling rule is that "contracts which contemplate
continuing performance (or successive performances) and which are indefinite in
duration can be terminated at the will of either party." Clear Lake, 549 S.W.2d at
390. While this rule is controlling in many cases, we are nonetheless mindful that
restrictions of indefinite duration are arguably subject to the principle that a reasonable
duration will be implied during which time the agreement is not terminable at will. See
id. at 391. The City appears to be asking this Court to follow this principle and
determine that a reasonable duration should have been implied and that the restrictions
and the agreement should not have been terminated during that time. See Clear Lake,
549 S.W.2d at 391; Banker, 277 S.W.2d at 134.
         In Clear Lake, however, the supreme court explained that a reasonable term
cannot always be implied. Clear Lake, 549 S.W.2d at 391-92. The Clear Lake Court
concluded that a water district simply cannot restrict its free exercise of governmental
powers for any reasonable term because it would inhibit its control over a
governmental function. Id.; see Fidelity Land & Trust Co. of Tex. v. City of West Univ.
Place, 496 S.W.2d 116, 117-18 (Tex. Civ. App.–Houston [14th Dist.] 1974, writ
ref'd n.r.e.) (court denied relief holding agreement operated to inhibit municipality in
its discretionary control over governmental function); Banker, 277 S.W.2d at 134
(water district could not bargain away governmental power to determine to whom and
under what conditions it would sell surplus water). We conclude the same reasoning
applies in this instance.
         As part of the 1974 Agreement, the City agreed not to condemn the Ocean
Drive property. George and Fay Taylor agreed to building and vegetation restrictions
on the Ocean Drive property and, in turn, the City agreed not to condemn the same
property. This had the effect of potentially controlling the City in the exercise of its
governmental powers. See Clear Lake, 549 S.W.2d at 391. The City cannot, by
contract or otherwise, bind itself in such a way as to restrict the free exercise of its
power of eminent domain or condemnation, even for a reasonable time. See Clear
Lake, 549 S.W.2d at 391; Burch, 518 S.W.2d at 545. Thus, it simply cannot be
implied that the parties agreed to be bound for a reasonable time. Id. The City could
not by contract or otherwise, bind itself in such a way as to restrict its exercise of
these governmental powers, nor could it abdicate its governmental functions, even for
a reasonable time. See id. Unless the1974 Agreement is treated as terminable at will,
it would have the impermissible effect of being void ab initio–a result neither party
could have intended. See id. Therefore, if the agreement is not void ab initio because
it illegally restricts the City's power of eminent domain, then it must be construed as
terminable at the will of either party. See id. By releasing and terminating their
reciprocal obligations, the Taylors, in effect, terminated the 1974 Agreement. 
Accordingly, the City's second issue is overruled.
V. Affidavit
         The City, by its twelfth issue, contends that the affidavit filed by the Taylors
that terminated and released the building and vegetation restrictions on the Ocean
Drive property was void and invalid. The City argues that the contract is binding, the
restrictions are valid, and the Taylors have no right to unilaterally terminate the
restrictions or to rescind any portion of the contract. This issue challenges: (1)
conclusions of law 8 and 9 which terminated the restrictions and released the Taylors
from the restrictions; and (2) additional conclusion of law 8 wherein the court
concluded the City was not entitled to its request for declaratory judgment.



         As set out above, however, we have concluded the City's covenant not to
condemn the Ocean Drive property is not lawful. We have also determined the 1974
Agreement contemplated continuous performance of indefinite duration that was
terminable at the will of either party.


 The Taylors filed a valid affidavit that
terminated and released their reciprocal obligations; obligations that restricted building
and certain vegetation growth on the Ocean Drive property. The filing of the affidavit
effectively terminated the 1974 Agreement.
         We conclude the trial court correctly drew legal conclusions 8, 9 and additional
conclusion of law 8 from the facts. See Dallas Morning News, 861 S.W.2d at 536. 
The challenged conclusions of law are not erroneous as a matter of law. See Stable
Energy, 999 S.W.2d at 547. We overrule the City's twelfth issue.
VI. Validation by Statute
         By its tenth issue, the City contends the court erred in awarding judgment for
the Taylors because, as a matter of law, all acts of the City were validated by statute. 
For this reason, the City complains that conclusion of law 5 was made in error. 
Conclusion 5 sets out the City's "claim of validation by statute is not applicable in this
case, in view of the evidence and the law."
         The purpose of validation acts is to cure nonconstitutional statutory
irregularities. See Kinkaid School, Inc. v. McCarthy, 833 S.W.2d 226, 231 (Tex. Civ.
App.–Houston [1st Dist.] 1992, no writ) (validation statutes cure nonconstitutional
procedural defects and irregularities in adoption of zoning ordinance); Richardson v.
State, 199 S.W.2d 239, 244 (Tex. Civ. App.–Dallas 1946, writ ref'd n.r.e.) (basic
purpose of validation statute is to give effect to ordinance passed in good faith, but
plagued by some procedural or minor defect). It is also to cure substantive defects of
a nonconstitutional nature. See Leach v. City of North Richland Hills, 627 S.W.2d
854, 858 (Tex. Civ. App.–Fort Worth 1982, no writ) (substantive defects which do
not render ordinances unconstitutional can be cured by validating statutes). Validation
statutes may not be used, however, to cure constitutional defects. See Murmur Corp.
v. Bd. of Adjustment of City of Dallas, 718 S.W.2d 790, 793 (Tex. App.–Dallas 1984,
writ ref'd n.r.e.). Moreover, "[v]alidation statutes cannot validate what the legislature
could not pass into law in the first instance." West End Pink, Ltd. v. City of Irving, 22
S.W.3d 5, 6 (Tex. App.–Dallas 1999, pet. denied) (citing 35 David B. Brooks, Texas
Practice: County & Special district Law § 3.13 (1989)); see City of Murphy v. City
of Parker, 932 S.W.2d 479, 485 (Tex. 1996) (Gonzales, J., dissenting) (validation
statutes "are not intended to put the Legislature's stamp of approval on otherwise void
enactments.").
         "The right of eminent domain granted by the constitution resides in the
legislature, and the legislature may declare the conditions of its use . . . ." Mercier v.
MidTexas Pipeline Co., 28 S.W.3d 712, 716 (Tex. App.–Corpus Christi 2000, pet.
denied). We have concluded, however, the covenant restricting the City's power of
eminent domain is contrary to public policy and void. Thus, even though the
legislature may declare the conditions of its use, to validate what we have concluded
is against public policy and void is not what the legislature intended by the enactment 
of the validation statutes. We conclude, therefore, the trial court correctly drew its
fifth legal conclusion from the facts when it refused to apply the City's claim of
validation by statute in this case. See Dallas Morning News, 861 S.W.2d at 536. The
challenged conclusion of law is not erroneous as a matter of law. See Stable Energy,
999 S.W.2d at 547. Accordingly, the City's tenth issue is overruled.
VII. Limitations
         By its seventh issue, the City asserts that under any and all legal theories
brought by the Taylors, the statute of limitations applies to bar recovery. The City
brings an evidentiary challenge contending the trial court erred in finding the lawsuit
was timely (finding of fact 1) and filed in a reasonable time (finding of fact 2), and
concluding the claim was not barred by limitations (additional conclusions of law 3 and
6). The City argues that it proved its affirmative defense of limitations and, thus,
recovery is precluded as a matter of law because the evidence was legally insufficient
to support a judgment otherwise. Alternatively, the City complains that the decision
of the court is against the overwhelming weight of the evidence.
         A four-year statute of limitations applies to contract actions. See Tex. Civ.
Prac. & Rem. Code Ann.§ 16.004 (Vernon 2002). However, in a contract that
contemplates continuing obligations, the following rule applies:
Limitations begins to run on a continuing contract at the earlier of the
following: (1) when the work [under the contract] is complete; (2) when
the contract is terminated in accordance with its terms; or (3) when the
contract is anticipatorily repudiated by one party and this repudiation is
adopted by the other party.
Hubble v. Lone Star Contracting Corp., 883 S.W.2d 379, 382 (Tex. App.–Fort Worth
1994, writ denied). As set out above, we have concluded the agreement at issue was
a continuous contract and was properly terminated at will by the filing of the Taylor
affidavit on August 20, 1997. See Clear Lake, 549 S.W.2d at 391-92. Thus, in
accordance with the terms of the agreement, being terminable at will, limitations
began to run with the filing of the affidavit.


 See Hubble, 883 S.W.2d at 382; see
also Clear Lake, 549 S.W.2d at 391-92. The Taylors timely filed their suit for a
declaratory judgment and, alternatively, for damages, in December 1998. We also
note that the City filed a counterclaim seeking a declaratory judgment that the
restrictions were valid and the document purporting to terminate and release the
restrictions was void and invalid. See Hubble, 883 S.W.2d at 382.
         The City has not established, as a matter of law, its limitations defense. Nor
is the decision of the court against the overwhelming weight of the evidence. Thus,
the legal and factual sufficiency challenges fail. Moreover, from our de novo review
of the challenged additional conclusions of law, we conclude they are not erroneous
as a matter of law. The City's seventh issue is overruled.
VIII. Laches
         In issue nine the City contends it proved the affirmative defense of laches. This
is a challenge to additional conclusions of law 3 and 6 wherein the trial court
concluded, in part, that the Taylors' claim was not barred by laches. "Laches is
usually available only in suits strictly in equity or in actions at law that involve claims
of an essentially equitable character." Brewer v. Nationsbank of State, 28 S.W.3d
801, 804 (Tex. App.–Corpus Christi 2000, no writ). Moreover, "laches should not bar
an action on which the statute of limitations has not run unless allowing the action
‛would work a grave injustice.'" Id. (citing Culver v. Pickens, 142 Tex. 87, 176
S.W.2d 167, 170-71 (Tex. 1943)). Here, we have concluded the claim is not barred
by limitations. Therefore, to succeed on laches, the City must show: (1) there was
an unreasonable delay by the Taylors in asserting their claims; (2) it made a good faith
change in position to its detriment because of the delay; and (3) there is some element
of estoppel or such extraordinary circumstances that it would be inequitable to allow
the Taylors to proceed with their claim against the City after the delay. Id. at 804-05.
         The City contends that the delay has been to its detriment because the 1974
negotiations have been lost through the deaths of the negotiators. It claims it cannot
be restored to its prior condition because at the time of the agreement that followed
a lengthy and contested court battle, it had the right of possession of the property. 
It urges that the termination of the contract cannot revert the City back to that
position. The City suggests that had the Taylors argued that the agreement was illegal
from the start, it would never have entered into the agreement. The City would then
have continued the condemnation proceedings and would currently own the property.
The facts of the case, however, reveal that, upon entering the 1974 Agreement, the
money the City had deposited into the registry of the court to pay for the Ocean Drive
property was returned to the City. The Taylors also conveyed to the City one-half
interest in the Water Street property. The value of that property at the time of
conveyance was $30,150. Additionally, the Taylors have maintained the property at
their expense and have paid taxes on the property.
         We cannot conclude the City proved it made a good faith change in position to
its detriment because of the delay. See id. Additionally, the City did not prove that
allowing the action would work a grave injustice, particularly when the City entered
into a covenant not to condemn the Ocean Drive property, a covenant that is contrary
to public policy and, thus, illegal and void. Therefore, from our de novo review of the
challenged additional conclusions of law, we conclude they are not erroneous as a
matter of law. We overrule the City's ninth issue as it relates to laches.
IX. Sovereign Immunity
         In issue eight, the City also argues that it is protected by sovereign immunity
if the court's ruling was based on the Taylors' claims of anticipated breach, deceit,
fraud, fraudulent inducement or unconscionable conduct. However, the trial court
refused to find the City liable for these allegations. Thus, this contention fails. The
City's eighth issue is overruled.
X. Attorney's Fees and the City‛s Remaining Issues
         In its sixth issue, the City argues that an award of attorney's fees is not proper
if the judgment below is not affirmed. Having found no reason to reverse the trial
court judgment, we overrule the City's sixth issue.
         Furthermore, we need not address the City's remaining issues as they are not
dispositive to this appeal. Tex. R. App. P. 47.1.
XI. Cross-Issue on Damages
         By one cross-issue, the Taylors contend the trial court erred in refusing to award
them actual damages.


 The conveyance of the Ocean Drive property to George and
Fay Taylor provided that should the City violate or not observe the covenant not to
condemn, the City agreed to pay $21,000 for the property, the same amount that had
been paid to acquire one-half interest in the Water Street property. The Taylors
contend that the City's void promise is clearly a "violation or nonobservance," and, as
such, falls within the terms used in the 1974 Agreement. Based on this reasoning, the
Taylors assert they are entitled to $33,446.96 ($21,000 plus six percent simple
interest). The Taylors, however, provide no citations to authority that support their
argument that a void promise should be construed as a violation or nonobservance. 
See Tex. R. App. P. 38.1(h) (brief must contain clear and concise argument for
contentions made, with appropriate citations to authorities and to the record). 
Furthermore, "claims not made to the trial court generally cannot be raised for the first
time on appeal." Coastal Liquids Transp. v. Harris County Appraisal Dist., 46 S.W.3d
880, 885 (Tex. 2001). Other than referring to the deed conveying the Water Street
property, the Taylors do not provide record citations showing where this argument was
made to the trial court. See Tex. R. App. P. 38.1(h); Coastal Liquids, 46 S.W.3d at
885. Finally, there is nothing in the record to establish that the Taylors excepted to
the judgment, filed a motion for new trial on this basis, or, in some other appropriate
manner, indicated to the trial court that they were dissatisfied with the judgment as
entered. See Hart v. Berko, Inc., 881 S.W.2d 502, 512 (Tex. App.–El Paso 1994,
writ denied), overruled on other grounds by Crown Life Ins. Co. v. Casteel, 22 S.W.3d
378, 388-89 (Tex. 2000). In the filing of this cross-issue the Taylors are not exempt
from the rule that their complaint has to be preserved for review. Formosa Plastics
Corp., USA v. Presidio Eng'rs and Contractors, Inc., 941 S.W.2d 138, 150 (Tex.
App.–Corpus Christi 1995), rev'd on other grounds, 960 S.W.2d 41, 43 (Tex. 1995). 
We, therefore, overrule the Taylors' cross-issue on damages.
XII. CONCLUSION
         Accordingly, the judgment of the trial court is affirmed.
 
NELDA V. RODRIGUEZ
Justice

Retired Justice Dorsey not participating.

Opinion delivered and filed this
the 12th day of February, 2004.