Floyd PITTMAN et ux., Appellants,

v.

CITY OF AMARILLO, Appellee.

No. 9113.

Court of Civil Appeals of Texas, Amarillo.

April 30, 1980.

Rehearing Denied May 28, 1980.

J. R. Hollingsworth, Amarillo, for appellants.

Merril E. Nunn, City Atty., John M. Black, Asst. City Atty., Amarillo, for appellee.

COUNTISS, Justice.

This appeal is from a judgment denying any recovery to appellants, Floyd Pittman and wife Freda Pittman, hereafter "the Pittmans," in their suit against appellee, the City of Amarillo, hereafter "Amarillo," entered pursuant to a directed verdict granted Amarillo by the trial court after the parties closed the evidence. The following two questions are presented: (1) do the Pittmans have a cause of action against Amarillo for damages caused by the plugging and removal of a portion of the Pittman's private sewer line located under a public street; and (2) are the Pittmans entitled to a free sewer tap and free sewer service from Amarillo pursuant to a 1949 easement agreement between Amarillo and the Pittmans' predecessor in title? We answer both questions in the negative and affirm the judgment of the trial court.

In 1949, O. K. Chamberlain and Anna Chamberlain executed an agreement with Amarillo, granting an easement for public sewer lines across a tract of land owned by the Chamberlains. In addition to a recited payment of $150 to the Chamberlains, the agreement contained the following paragraph:

And the further consideration of the City of Amarillo's covenant to, upon request by Grantor, provide one tap to said sewer line to be made on Grantor's premises. The free use of said tap to be restricted to the occupant of the of the [sic] improvements now located on the tract above-described, and subject to the City's regulations regarding the use of its sewer system.

The Chamberlains constructed a private sewer line approximately 600 feet long from two houses on the tract to the public sewer line.[1] Presumably, the private lines were tapped into the public line without charge. In any event, the two houses on the tract received free sewer service thereafter, until shortly before the institution of this litigation.

In 1963, the Chamberlains subdivided a portion of the tract in question and dedicated to the public all roads shown on a plat of the subdivision. The subdivision was approved by Amarillo. One of the dedicated roads, Bonnie Drive, crossed the private sewer line previously installed by the Chamberlains. The dedication of Bonnie Drive did not, however, reserve any rights in the private sewer line.

In 1974, the Pittmans purchased one of the two houses on the tract along with some surrounding acreage. They were aware of the free sewer service when they bought the house and considered it a selling point for the property. Bonnie Drive ran along the north boundary of the acreage purchased by the Pittmans. The private sewer line ran from the Pittmans' house, under Bonnie Drive, and in a northwesterly direction across and under other property to its connection with the public sewer line.

From the time of its dedication until 1977, Bonnie Drive was an unpaved public street. In December 1976, pursuant to a request from property owners in the area, Amarillo decided to pave Bonnie Drive and awarded a paving contract for that purpose. In early 1977, while grading the street, workmen for the paving contractor uncovered and damaged the Pittmans' private sewer line. The line was repaired and work halted on the paving project. Studies conducted by Amarillo revealed the line would have to be removed before the street could be paved, because the street could not be elevated above the line without causing drainage problems, and the line could not be buried deep enough to be unaffected by the paved street without creating a sag in the line that would cause sewage to back up. Amarillo and the Pittmans negotiated the matter for several months but were unable to resolve the controversy. There were other public sewer lines in the area available to the Pittmans, but they were unwilling to pay the $250 tap fee required by Amarillo.

---

1. There is some indication in the evidence that the public and private sewer lines were actually installed before an agreement was reached between Amarillo and the Chamberlains.

In September 1977, the paving contractor removed the portion of the Pittmans' private line located under Bonnie Drive, plugged the line and paved the street. Several weeks later, the Pittmans paid the tap fee, relocated their line and were connected to another line. Thereafter, Amarillo began billing the Pittmans for sewer service.

The Pittmans instituted this litigation seeking various items of relief, principally damages growing out of the effective destruction of their private sewer line and restoration of free sewer service. At the conclusion of the evidence, the trial court withdrew the case from the jury and entered a take-nothing judgment in favor of Amarillo. In this court, the Pittmans advance four points of error. The resolution of this matter, however, is determined by two basic propositions advanced by the Pittmans: (1) by effectively destroying their private sewer line across Bonnie Drive, Amarillo has taken a property right from them without just compensation and (2) under the 1949 agreement, they are entitled to free sewer service from Amarillo. We will resolve the issues in the order stated.

■ When a road or street is dedicated to the public, the governmental entity exercising jurisdiction over the street ordinarily acquires only an easement in the street, *Texas Co. v. Texarkana Mach. Shops*, 1 S.W.2d 928, 931 (Tex.Civ.App.—Texarkana 1928, no writ), and holds the street in trust for the benefit of the public. *City of Mission v. Popplewell*, 156 Tex. 269, 294 S.W.2d 712, 715 (1956). The easement held by the governmental entity necessarily carries with it the right to use and control as much of the surface or subsurface of the street as may be reasonably needed for street purposes. *Hill Farm, Inc. v. Hill County*, 436 S.W.2d 320, 321 (Tex.1969). Unless the dedication states otherwise, the abutting landowner owns the fee simple title to the center of the street, subject to the public easement. *City of Fort Worth v. Southwest Magazine*, 358 S.W.2d 139, 141 (Tex.Civ. App.—Fort Worth 1962, writ ref'd n. r. e.),

*cert. denied*, 372 U.S. 914, 83 S.Ct. 730, 9 L.Ed.2d 722 (1963). The landowner's exercise of his fee title rights cannot interfere with or restrict the public use of the street. *See Hill Farm, Inc. v. Hill County, supra*, at 323; *Hale County v. Davis*, 572 S.W.2d 63, 65 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.). Any use by others that interferes with the exercise of the superior easement rights must yield. *See Travis-Williamson Water Control District v. State*, 359 S.W.2d 528, 532 (Tex.Civ.App.—Austin 1962, writ ref'd n. r. e.); *City of San Antonio v. Bexar Metropolitan W. Dist.*, 309 S.W.2d 491, 492 (Tex.Civ.App.—San Antonio 1958, writ ref'd).

■ In this case, when the Pittmans acquired fee simple title to their acreage, they also acquired fee simple title to the center of that portion of Bonnie Drive abutting their property, subject to the street easement. The private sewer line was not specifically conveyed to them, but that portion of the line under their property passed to them as one of the incidents of ownership under the title they acquired. Prior to their purchase, however, Bonnie Drive had been dedicated without restriction to Amarillo. The practical effect of that unrestricted dedication was to make any right to use the private sewer line secondary and inferior to the public use and control of the street. Paving of the street is a permissible use or control of the street within the scope of the easement. The undisputed evidence established the incompatibility of the private sewer line and the paved street. The Pittmans' use of the underlying fee must, therefore, yield to the public use of the easement. The Pittmans' property right is inferior, and subject to, Amarillo's property right; thus, there was no taking for which Amarillo must pay compensation.

The second issue requiring resolution is the Pittmans' asserted right to a free tap and free sewer service from Amarillo. The Pittmans base their claim on the paragraph from the 1949 easement which reads as follows:

And the further consideration of the City of Amarillo's covenant to, upon request by Grantor, provide one tap to said sewer line to be made on Grantor's premises. The free use of said tap to be restricted to the occupant of the of the [sic] improvements now located on the tract above-described, and subject to the City's regulations regarding the use of its sewer system.

The paragraph is patently ambiguous. The evidence, however, is undisputed that the parties construed the paragraph to mean the occupants of the two houses connected to the public sewer line in 1949 were to receive a free tap and free sewer service, apparently so long as the houses existed. Free service was provided to the Pittmans until this controversy arose. We will give the paragraph the same interpretation given it by the parties for the purpose of resolving the issue.

 The operation of a sewer system by a municipality in Texas is the exercise of a governmental function. *Gotcher v. City of Farmersville*, 137 Tex. 12, 151 S.W.2d 565, 566 (1941); *Fidelity L. & Trust Co. of Tex. v. City of W. Un. Place*, 496 S.W.2d 116, 117 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n. r. e.). When discharging a governmental function, a municipality, as an agent of the state, is exercising the state's police power, which is a grant of authority from the people to the government for the protection of the health, safety, comfort and welfare of the public. *Banker v. Jefferson County Water Control & I. Dist.*, 277 S.W.2d 130, 133 (Tex.Civ.App.—Beaumont 1955, writ ref'd n. r. e.). As such, the police power cannot be abdicated or bargained away "and is inalienable, even by express grant." *Id.* at 134. As stated in *Fidelity L. & Trust Co. of Tex. v. City of W. Un. Place, supra*, at 117:

It is equally clear that "a city cannot by contract or otherwise surrender its governmental or legislative functions, nor can it legally enter into any contract which will embarrass or control its legis-

lative powers and duties or which amount to an abdication of its governmental function or of its police power." *Bowers v. City of Taylor*, 16 S.W.2d 520, 521 (Tex.Comm'n App.1929, holding approved).

 Specifically, a municipality cannot by contract grant another entity free connection to its sewer system, *see Fidelity L. & Trust Co. of Tex. v. City of W. Un. Place, supra*, at 117, or free water from a city lake, *Sayles v. City of Abilene*, 290 S.W. 239, 243 (Tex.Civ.App.—Eastland), *aff'd*, 295 S.W. 578 (Tex.Comm'n App.1927), or obligate itself to meet all water and sewage treatment needs of another entity, *see Clear Lake City Water Auth. v. Clear Lake Util.*, 549 S.W.2d 385, 392 (Tex.1977), or permit another entity to control the charging or collection of revenue from its sewer system. *Cibolo Creek Mun. Auth. v. City of Univ. City*, 568 S.W.2d 699, 703 (Tex.Civ. App.—San Antonio 1978, no writ). In short, a municipality cannot, by contract or otherwise, transfer control of its governmental functions to another entity, absent specific constitutional authorization.

 The paragraph in question purports to a grant a free tap and free sewer service to the occupants of improvements located on the premises, apparently for so long as those improvements exist. A grant of that nature is a bargaining away of the municipality's governmental power to regulate and control its sewer system and to charge and collect for its use. It is also an abdication of its responsibility to determine "whether, on any particular date, it is in the best interests of all of its customers and the public in general, to extend . . . sewer service to a particular person or entity." *Clear Lake City Water Auth. v. Clear Lake Util., supra*, at 392. The paragraph in question, as construed by the parties, is void and, thus, unenforceable.

The foregoing holdings dispose of the Pittmans' four points of error. The points are overruled and the judgment is affirmed.