**CITY OF ARLINGTON,**
Texas, Appellant,

v.

**CITY OF FORT WORTH,**
Texas, Appellee.

No. 2–92–073–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 23, 1992.

Rehearing Overruled Jan. 26, 1993.

Casstevens & Casstevens and Grace Casstevens, Austin, for appellant.

Kelly, Hart & Hallman, P.C. and Dee J. Kelly, Marianne M. Auld, Fort Worth, for appellee.

Before MEYERS and DAY, JJ., and CLYDE R. ASHWORTH, J. (Retired) (Sitting by Assignment).

## OPINION

DAY, Justice.

This is an appeal from a summary judgment granted in favor of the City of Fort Worth, Texas. The suit arose out of a contract for sewage treatment services between Fort Worth and the City of Arlington, Texas. Arlington sued Fort Worth for a declaratory judgment that Fort Worth is obligated to provide sewage treatment services beyond February 14, 2001, the date upon which the contract expires. Fort Worth filed a counterclaim, seeking declaratory judgment that it is not obligated to continue treating Arlington's sewage beyond February 14, 2001. Fort Worth then moved for summary judgment on its counterclaim. The trial court rendered summary judgment for Fort Worth in all respects and declared that Fort Worth will have no further sewage treatment obligations to Arlington as of February 14, 2001, unless the parties renew or extend the current contract.

We affirm.

The briefs of the parties on appeal show that they agree on the following material facts: (1) the two cities entered into a contract on February 14, 1966, under which Fort Worth agreed to provide Arlington sewage treatment service for the west and southwest portions of that city; (2) Arlington, voluntarily but because of the contract, abandoned plans to build its own sewage treatment plant; (3) in 1984 Fort Worth entered into negotiations with Arlington and its 22 other municipal customers for a renewal and revision of the various contracts it had with them in an effort to have a uniform contract; (4) negotiations between Fort Worth and Arlington broke down, primarily over the rate to be charged Arlington by Fort Worth, and on December 28, 1988, Fort Worth notified Arlington that sewage treatment would not be provided beyond the contract expiration date; (5) on February 22, 1989, Arlington filed suit for a declaratory judgment that Fort Worth is required to provide sewage treatment services after the contract expires; (6) over the years Fort Worth has, and to this day does, use the fact of its service to Arlington, the number of households served, and the volume it must accept, as part of its applications for federal funds to expand and improve the Village Creek wastewater treatment facility, which processes Arlington's contract sewage; (7) Fort Worth has received a federal designation as the regional wastewater treatment management agency for the portion of Arlington served (the Trinity River Authority is the management agency for the remainder of Arlington's sewage) under the Water Quality Management Plan for North Central Texas; (8) that plan is reached on a consultative basis by the North Central Texas Council of Governments and approved by the Texas Water Quality Board; (9) the plan is reviewed annually so that it can be revised to meet changing needs, but there has been no change in Fort Worth's management designation nor, to date, an application for such a change; (10) this management scheme for North Central Texas has been developed in response to federal statutes, *e.g.*, 1972 amendments to the Clean Water Act, passed to correct sewage discharge and regionalize plans to treat discharge so as to protect the quality of the nation's water resources; (11) it is under this scheme that Fort Worth was designated a management agency and received $96 million in federal funds for the Village Creek plant; and (12) the rate dispute is before another body and plays no part in the resolution of the question concerning the obligation to provide continuing service.

■ In its second point of error, Arlington complains that the trial court's summary judgment on Fort Worth's counterclaim was improper because it amounted to an advisory opinion based on speculation and was thus beyond the trial court's jurisdiction. Arlington failed to raise this issue in the trial court, and it is therefore waived on appeal. TEX.R.APP.P. 52(a); *Requipco, Inc. v. Am–Tex Tank & Equip.*, 738 S.W.2d 299, 302 (Tex.App.—Houston [14th Dist.]

1987, writ ref'd n.r.e.) (in ruling on a motion for summary judgment, the trial court considers the record only as it appears when the motion for summary judgment is heard).

We overrule Arlington's second point of error.

In its remaining points of error and its response points, Arlington complains that the trial court improperly rendered a final summary judgment because: (1) Fort Worth did not establish its counterclaim as a matter of law; (2) no motion for summary judgment on Arlington's causes of action had been filed; and (3) Fort Worth did not establish that Arlington could not prove an essential element of each of its causes of action.

■ A summary judgment movant is not entitled to summary judgment as a matter of law on a cause of action not addressed in the summary judgment proceeding. *Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex.1983). The movant must establish its entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively establishing all essential elements of its cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); Tex.R.Civ.P. 166a.

Initially, we find that Arlington's and Fort Worth's claims for declaratory judgment mirrored each other. Accordingly, judgment in favor of one party is of necessity a judgment against the other. Thus, if the trial court properly granted summary judgment on Fort Worth's claim, nothing remains of Arlington's claim for a trier of fact to consider.

■ Fort Worth's declaratory judgment claim, upon which it moved for summary judgment, is based on contractual and police powers theories. Fort Worth's contractual claim is (1) that it has a wastewater treatment service contract with Arlington that expires on February 14, 2001, and (2) that it has no obligation to provide this service to Arlington under the contract beyond the expiration date of the contract.

Arlington concedes (1) that Fort Worth's present obligation to provide wastewater treatment is contractual, (2) that the contract will expire on February 14, 2001, and (3) that it has not been renewed. Thus, there is no material issue of fact with regard to Fort Worth's contractual claim. Moreover, because both Fort Worth and Arlington agree that Fort Worth's duties under the contract cease on the date the contract expires, the elements of Fort Worth's contractual claim are established as a matter of law.

Nonetheless, Arlington contends that its relationship with Fort Worth is more than contractual. In its first amended original petition, Arlington requested declaratory relief based on six theories: express trust, third-party beneficiary, common-law utility, constructive trust, estoppel, and implied contact. Arlington raised these theories as affirmative defenses to Fort Worth's counterclaim for declaratory judgment and reiterated them in response to Fort Worth's motion for summary judgment. The trial court considered each of these theories and ruled against Arlington on all of them. We need not consider whether these theories were before the trial court or the propriety of the trial court's placement of the burden of proof, however, because of the overriding nature of the police powers doctrine.

■ Fort Worth's police powers claim is that, as a municipality, it has inherent authority to terminate extraterritorial wastewater treatment services. *See Town of Griffing Park v. City of Port Arthur*, 628 S.W.2d 101, 103 (Tex.App.—Beaumont 1981, writ ref'd n.r.e.). Under Texas case law, a ruling, premised upon any theory, that Fort Worth has a duty to provide wastewater treatment service to Arlington indefinitely after February 14, 2001, would violate the police powers doctrine. This being the case, any decision other than the one made by the trial court would have been erroneous.

■ Arlington itself argues that Texas law recognizes that a municipality may be bound by its representations, oral and written, that it will provide water or sewer service outside municipal limits *so long as*

*it does not abdicate its governmental responsibilities.* Arlington correctly summarizes Texas law on this issue.

■■■ A municipality's operation of a sewer system in Texas is the exercise of a governmental function. *Pittman v. City of Amarillo,* 598 S.W.2d 941, 945 (Tex.Civ. App.—Amarillo 1980, writ ref'd n.r.e.). When discharging a governmental function, a municipality, as an agent of the state, is exercising the state's police power, which is a grant of authority from the people to the government for the protection of the public health, safety, and welfare. *Id.* As such the police power cannot be abdicated or bargained away. It is inalienable, even by express grant. *Id.* Thus, a city cannot, by contract or otherwise, transfer control of its governmental functions to another entity, absent specific constitutional authorization. *Id.*

■■■ Nonetheless, a municipality can be and is bound by its commitment to provide such services *unless the entity promises or contracts to do so for an indefinite period of time.* Arlington directs us to numerous cases in support of its contention that a municipal corporation can be bound by its commitment to provide sewer service. *Winograd v. Clear Lake City Water Auth.,* 811 S.W.2d 147 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Brubaker v. Brookshire Mun. Water Dist.,* 808 S.W.2d 129 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Winograd v. Clear Lake City Water Auth.,* 654 S.W.2d 862 (Tex.App.— Houston [14th Dist.] 1983, writ ref'd n.r.e.). These cases, when considered with those upon which Fort Worth relies, clearly show that a city's commitment to provide sewer service for a certain period of time is enforceable. These cases also show, however, that any agreement to provide sewer service for an indefinite period of time or for an indefinite amount of waste is unenforceable. *See Clear Lake City Water Auth. v. Clear Lake Utilities,* 549 S.W.2d

385, 390–91 (Tex.1977) (water authority's contract to provide water and sewer service indefinitely is terminable at will because it abdicates the entity's governmental function); *City of Farmers Branch v. City of Addison,* 694 S.W.2d 94, 95 (Tex.App.— Dallas 1985, writ ref'd n.r.e.) (contract granting City of Addison the right to connect its sanitary lines to Farmers Branch trunk sewer line at such times and locations as Addison deemed necessary was unenforceable as in derogation of City's governmental function); *Pittman,* 598 S.W.2d at 945 (municipality cannot by contract grant another entity free connection to its sewer system, obligate itself to meet all water and sewage treatment needs of another entity, or permit another entity to control the charging or collection of revenue from its sewer system).

An agreement to provide sewer service for an indefinite period of time bargains away a city's governmental responsibilities and abdicates its police power. Such an agreement strips the city of its power to determine whether, on a particular date, it is in the best interests of all of its customers and the public in general to extend water and sewer service to a particular person or entity. *Clear Lake Utilities,* 549 S.W.2d at 392.

As Arlington itself concedes, a commitment that involves a municipality's abdication of governmental responsibilities is unenforceable.[1] A city cannot make a contract for sewer services that has the effect of potentially controlling or embarrassing the city in the exercise of its governmental powers. *Fidelity Land & Trust Co. v. City of West University Place,* 496 S.W.2d 116, 117 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.). Texas case law on this issue is clear: Fort Worth cannot make an enforceable contract to provide sewer service to Arlington indefinitely. Accordingly, neither can Arlington rely on any other theory to establish a duty for

---

1. Arlington also contends that whether a municipality has abdicated its governmental responsibilities is a fact question. Arlington raises this issue for the first time on appeal, and thus it is waived. Tex.R.App.P. 52(a). Nonetheless, even if the issue were not waived, we believe the case

law clearly shows that a municipality's commitment to provide wastewater treatment service for an indefinite period of time is unenforceable as an abdication of police power and governmental responsibility. Accordingly, this issue is a legal one.

Fort Worth that Fort Worth is powerless to undertake on its own. We therefore find that Fort Worth established its police powers claim as a matter of law.

Because Fort Worth established its contractual and police powers claims as a matter of law, we find that the trial court properly granted summary judgment for Fort Worth on its claim for declaratory judgment. Thus, nothing remains of Arlington's declaratory judgment claim for a trier of fact to consider. We overrule Arlington's remaining points of error and its response points.

The trial court's judgment is affirmed.