NOS. 07-06-0018-CR

 07-06-0019-CR

 07-06-0020-CR

 07-06-0021-CR

 07-06-0022-CR

 07-06-0023-CR

 07-06-0024-CR

 07-06-0025-CR

 07-06-0026-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



NOVEMBER 30, 2006


______________________________



CARLOS J. TIJERINA, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NOS. 2005-408493, 2005-408513, 2005-408597, 2005-408971, 2005-408972,



2005-409072, 2005-409074, 2005-409564, 2005-409565;



HONORABLE JIM BOB DARNELL, JUDGE


_______________________________



Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION


 In a consolidated appeal, Carlos Tijerina, appellant, appeals his convictions for nine
felonies. Appellant entered a plea of guilty, without a plea bargain, in each case. Two of
the convictions were for third degree felonies, enhanced by two previous felony 
convictions to a punishment range of from 25 years to 99 years or life, and appellant was
sentenced to 60 years confinement in the Institutional Division of the Texas Department
of Criminal Justice on each case. The other seven cases were state jail felonies also
enhanced by two prior felony convictions to a second degree punishment range. On each
state jail felony, appellant was sentenced to 20 years confinement in the Institutional
Division of the Texas Department of Criminal Justice. All sentences were to be served
concurrently.

 By three issues appellant contends that the trial court committed error in 1) allowing
the sentences in the seven state jail felonies to be enhanced without any proper
enhancement pleadings; 2) by failing to properly admonish appellant before accepting his
pleas of guilty; and 3) by refusing to enter an acquittal pursuant to article 1.15 of the Texas
Code of Criminal Procedure, for the offense of felony use or possession of identifying
information, because the evidence was legally insufficient to sustain a finding of guilt.

 We will affirm the judgment of the trial court.

Factual and Procedural Background


 Appellant was arrested for multiple felonies in Lubbock County which culminated in
a plea of guilty to nine felonies without benefit of a plea agreement. Prior to appellant's
pleas of guilty, on September 1, 2005, the trial court held a pre-trial hearing on non-evidentiary matters. At that hearing, the State filed notices of intent to enhance the two
third degree felonies alleging that, prior to committing those offenses, appellant had been
convicted of two prior felony offenses, thereby enhancing the punishment range to 25
years to 99 years or life. The notice of enhancements were filed in the two cases alleging
possession of cocaine of less than four grams but over one gram. (These are appellate
cause nos. 07-06-0024-CR and 07-06-0020-CR.) Subsequently, appellant decided to
forego trial and entered the guilty pleas referenced above. The guilty pleas were entered
on November 2, 2005. At the time of the guilty pleas, appellant was admonished verbally
and in writing as to the applicable range of punishment for all nine cases as enhanced. In
each of the nine felonies appellant plead guilty to the primary offense and true to the
enhancement allegations. After receiving the pleas of guilty, the trial court adjourned the
proceedings and set the punishment hearing for a later date. On December 28, 2005, the
trial court conducted the punishment hearing and assessed the punishment from which
appellant now appeals.

State Jail Felonies


 Appellant's first contention, concerning the state jail felonies, is that the trial court
allowed the State to orally file enhancements for purposes of punishment on the day of the
plea of guilty and thereby harming appellant by increasing the punishment that appellant
was facing. In each of these cases, the trial court sentenced appellant to 20 years
confinement in the Institutional Division of the Texas Department of Criminal Justice. 
Appellant has couched his arguments in terms of a violation of appellant's due process
rights as a result of inadequate notice provided by the State of its intention to seek an
enhanced punishment.

 However, before we can consider the merits of appellant's argument, we must first
determine if appellant's complaint is properly before us. In order to complain on appeal
about the action of the trial court, appellant must properly preserve the issue for appeal. 
Tex. R. App. P. 33.1(a). This is true even when appellant couches his arguments in terms
of a constitutional argument. Ex Parte Alakayi, 102 S.W.3d 426, 434-35
(Tex.App-Houston [14th Dist.] 2003, pet ref'd) (citing Saldano v. State, 70 S.W.3d 873, 887
(Tex.Crim.App. 2002)). 

 A complete review of this record reveals that at no time did appellant ever complain
about the lack of notice of the State's intent to use his prior convictions for enhancement
purposes on the seven state jail felonies. He neither objected to the use nor did he request
any continuance alleging surprise. Further, appellant filed a motion for new trial and could
have preserved the error by raising the issue in said motion. However, he failed to do so. 
Objections or motions promote the prevention of and/or correction of errors and thereby
promote overall efficiency in the administration of justice. See Saldano, 70 S.W.3d at 887. 
Appellant has waived his complaint and presents nothing for our review.

Admonishments Prior to Pleas


 Appellant next complains about the lack of proper admonishments prior to entering
his pleas of guilty. A review of appellant's complaint reveals that his allegations of
improper admonishment are aimed at the oral admonishments given by the trial court. 
Appellant points to several errors made by the trial court and an alleged total failure to
admonish the appellant as to one of the pleas. However, appellant's contentions overlooks
one important factor. Along with the oral admonishments, appellant executed written
admonishments in all nine cases. Appellant makes no complaint about these
admonishments being incomplete, inaccurate or wholly lacking. Appellant and his counsel
signed all of the written admonishments and thereby acknowledged that they read and
understood the consequences of the pleas of guilty being entered into. Further, the written
admonishments stated that appellant waived the requirements of any oral admonishments. 
After reviewing the written admonishments, we have determined that they meet the
requirements of article 26.13 of the Texas Code of Criminal Procedure. Tex. Code Crim.
Proc. Ann. art. 26.13 (Vernon Supp 2005), see Ruffin v. State, 3 S.W.3d 140, 144-45
(Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). Once it has been established that the trial
court complied with the statutory mandate on admonishments, the burden shifts to the
appellant to affirmatively show that he was not aware of the consequences of his plea. Id. 
Having reviewed the entire record, we do not find any indications that appellant lacked 
knowledge of the consequences of his plea. See Burnett v. State, 88 S.W.3d 633, 638
(Tex.Crim.App. 2002) (reviewing court must review entire record to determine if anything
suggests that appellant did not know the consequences of his plea). Accordingly, there is
no error in the admonishments of appellant shown in the record. Appellant's issue is
overruled.

Article 1.15 Texas Code of Criminal Procedure


 Appellant's final complaint is that the trial court committed error when it did not enter
an order of acquittal because the evidence was insufficient on the issue of mens rea under
article 1.15 of the Texas Code of Criminal Procedure. Article 1.15 provides:

 . . . it shall be necessary for the state to introduce evidence into the recordshowing the guilt of the defendant and said evidence shall be accepted by
the court as the basis for its judgment and in no event shall a person charged
be convicted upon his plea without sufficient evidence to support the same.
The evidence may be stipulated if the defendant in such cases consents. . . .


Tex. Code Crim. Proc. Ann. art. 1.15 (Vernon 2005). Appellant was charged by
indictment with the offense of Fraudulent Use or Possession of Identifying Information. 
Tex. Pen. Code Ann. § 32.51 (Vernon 2005). At the time of his arrest for the instant
offense, appellant was in possession of the identification for one "Daniel Vidales." 
Appellant contends that, although he confessed to using certain counterfeit checks in the
name of "Daniel Vidales," the state failed to produce the alleged victim at trial or otherwise
prove that "Daniel Vidales" failed to consent to the use of identification or that he was even
a real person. According to appellant's theory, this failure of evidence leads to the
conclusion that the evidence was insufficient and, accordingly, to the requirement that the
trial court enter an order of acquittal. 

 At the time of appellant's plea, he not only entered a plea of guilty to the offense,
but he also signed a written judicial confession. The judicial confession signed by
appellant provides in part, "I understand the foregoing allegations and I confess that they
are true . . . ." This court has had the opportunity to address allegations similar to
appellant's before. In an unpublished opinion, we have held that a written confession
admitting the veracity of the allegations is sufficient to establish guilt. Overton v. State,
2006 Tex. App. LEXIS 397 (Tex.App.-Amarillo Jan. 18, 2006, no pet.) (not designated for
publication) (relying on Dinnery v. State, 592 S.W.2d 343, 353 (Tex.Crim.App. [Panel Op.]
1980) (op. on reh'g)). We see no reason to alter our position and, accordingly, overrule
appellant's contention.

Conclusion


 Having overruled appellant's issues, the judgments of the trial court are all affirmed.

 

 Mackey K. Hancock

 Justice








Do not publish. 




 

 



 



efore REAVIS
and CAMPBELL, JJ., and BOYD, S.J.[1]

                                                                      OPINION








Appellant, Lane Hardwicke, brings this interlocutory appeal from the
denial of his request for a temporary injunction in a declaratory and
injunctive action he brought against the City of Lubbock.  Hardwicke sought declarations invalidating
the statutes and ordinances under which the City was acting and to enjoin the
City from pursuing condemnation proceedings against property owned by him. We
will affirm the trial court=s order.                                

FACTUAL
AND PROCEDURAL BACKGROUND

The
litigation concerns a tract of real property owned by Hardwicke and located on
9th Street in Lubbock.  The
property consists of a single lot, on which is situated a structure built as a
residence but now divided into four apartments. 
The property is located in the North Overton[2]
area of Lubbock designated by the City in March 2002 as the North Overton
District Tax Increment Finance Reinvestment Zone, under the Tax Increment Financing Act (the Act).[3]  See Tex. Tax. Code Ann.  Ch. 311 (Vernon 2002 & Supp. 2004).








The Act permits a municipality to designate a geographic area as a tax
increment reinvestment zone to promote development or redevelopment of the area
if it determines that would not occur solely through private investment in the
reasonably foreseeable future.  ' 311.003(a). 
Private development or redevelopment is facilitated, inter alia,
by public infrastructure improvements.[4]  See ' 311.011.  Both
the public works and private redevelopment are undertaken pursuant to
redevelopment plans approved by the municipality.  Id.

Section 311.005 of the Act sets out the criteria required of an area
designated as a reinvestment zone.  The
North Overton zone was established in response to a petition of property
owners, pursuant to Section 311.005(a)(5),[5]
led by entities associated with developer Delbert McDougal that had acquired a
significant percentage of the properties in the area.  








McCanton Woods, Ltd., is the lead developer in the North Overton
zone.  It negotiated with Hardwicke to
acquire his property.  Testimony in the
record before us indicates agreement was reached at one point for Hardwicke=s sale of his property to McCanton Woods, but
ultimately the negotiations were unsuccessful. 
The Act authorizes municipalities to exercise powers necessary and
convenient to carry out plans for reinvestment zones, including the power to
acquire real property by condemnation.  See
' 311.008. 
McCanton Woods requested the City to initiate efforts to acquire
Hardwicke=s property.  In
November 2003 the City obtained an appraisal of Hardwicke=s property, and in December the City Council
authorized condemnation of the property. 
At that time the City sent Hardwicke a letter offering for the property
the appraised value, taken from the November appraisal.  The City sent a second letter on January 6,
2004, containing a Afinal offer@ in the same amount and informing Hardwicke that
failure to accept the offer within ten days would result in the initiation of
condemnation proceedings on the property. 
Hardwicke filed the underlying suit on January 13.

In February 2004, the City Council approved an agreement with McCanton
Woods concerning acquisition of Hardwicke=s property and another tract in the North Overton
reinvestment zone.  The agreement recited
that McCanton Woods had acquired Aa large percentage@ of the property in the zone and intended to develop
the property in accordance with the zone project plan but was unable to acquire
the two parcels Anecessary to the implementation of the Amended
Project Plan@ and that it sought to have the City acquire the
property by condemnation.  The agreement
provided McCanton Woods would reimburse the City for the cost of condemnation,
including attorneys fees.  The City
agreed to take title to the properties acquired by eminent domain, and to
transfer them to McCanton Woods Aat fair market value, to be used to implement the
Amended Project Plan approved by the City Council.@ 








Hardwicke=s pleadings[6]
sought twelve specific judicial declarations including declarations that
sections of the Act and the City=s ordinance establishing the reinvestment zone are
unconstitutional as applied, the City=s designation of the boundaries of the reinvestment
zone was arbitrary and capricious and represented Abad faith, fraud and collusion,@ and that his property has historical significance
and was entitled to protection.  He
sought temporary injunctions enjoining the City from instituting or prosecuting
condemnation of his property until final judgment on his declaratory action, and
from Aengaging in any act to diminish the value@ of the property or otherwise interfering with his
quiet enjoyment of it, and sought permanent injunctive relief. 

The trial court conducted a hearing on appellant=s application for a temporary injunction on February
10, 2004. The court heard testimony and argument of counsel, and admitted
twenty-six exhibits.  The court denied
appellant=s request for temporary relief in a written order
filed March 3, 2004.  Appellant perfected
this interlocutory appeal from that order.[7]  See Tex. Civ. Prac. & Rem. Code
Ann. ' 51.014(a)(4) (Vernon Supp. 2004). 

Hardwicke filed a motion for new trial and other relief.  By an order signed April 2, 2004, the trial
court denied all the relief requested by that motion except for a request to
stay condemnation proceedings.  The court
ordered that condemnation proceedings, including the appointment of special
commissioners, were stayed for a stated period of time pending appeal.  On the expiration of that stated period, and
on Hardwicke=s motion, this court continued that stay of
condemnation proceedings. 

 

 








STANDARD
OF REVIEW

The purpose of a temporary injunction is to preserve the status quo
until a final hearing on the merits.  Butnaru
v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002); Miller Paper Co. v.
Roberts Paper Co., 901 S.W.2d 593, 597 (Tex.App.‑‑Amarillo
1995, no writ).  A party seeking a
temporary injunction must plead and prove: 
(1) a cause of action against the defendant; (2) a probable right to the
relief sought; and (3) a probable, imminent and irreparable injury in the
interim.  Butnaru, 84 S.W.3d at
204; see Letson v. Barnes, 979 S.W.2d 414, 417 (Tex.App.‑-Amarillo
1998, pet. denied).  A temporary
injunction applicant is not required to establish that he will prevail on final
trial on the merits of his cause of action; he need only show a probable right
on final trial to the relief he seeks.   Butnaru,
84 S.W.2d at 204, 211; see Sun Oil Co. v. Whitaker, 424 S.W.2d 216, 218
(Tex. 1968).

            A
trial court=s decision to grant or deny a temporary injunction
lies in the court=s sound discretion, and we may reverse that decision
only if it reflects a clear abuse of discretion.  Butnaru, 84 S.W.3d at 204; Walling v.
Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993); 
Letson, 979 S.W.2d at 417. 
An appellate court reviewing that interlocutory decision is not to
review the merits of the underlying action, but must strictly limit its review
to the inquiry whether there has been a clear abuse of discretion by the trial
court in granting or denying the temporary injunction.  Davis v. Huey, 571 S.W.2d 859, 861-62
(Tex. 1978); Sherrod v. Moore, 819 S.W.2d 201, 202 (Tex.App.BAmarillo 1991, no writ).  We may not substitute our judgment for the
trial court=s judgment unless its action was so arbitrary as to
exceed the bounds of reasonable discretion. 
Butnaru, 84 S.W.3d at 204. 








When, as here, no findings or fact or conclusions of law are requested
or filed,[8]
the trial court=s judgment must be upheld on any legal theory
supported by the record.  See Huey, 571
S.W.2d at 862; Gurvich v. Tyree, 694 S.W.2d 39, 43 (Tex.App.BCorpus Christi 1985, no writ).  The trial court does not abuse its discretion
if some evidence reasonably supports its decision.  Butnaru, 84 S.W.3d at 211, citing Huey,
571 S.W.2d at 862.  We are to draw
all legitimate inferences from the evidence in a manner most favorable to the
trial court=s judgment.  Miller
Paper, 901 S.W.2d at 598; Miller v. K & M P=ship, 770
S.W.2d 84, 87 (Tex.App.BHouston [1st Dist.] 1989, no writ).

Hardwicke presents a single issue contending the trial court abused its
discretion in denying his request for a temporary injunction.  He contends that uncontradicted evidence
presented at the temporary injunction hearing established his probable right to
the declaratory relief he seeks, and that the trial court therefore abused its
discretion by misapplying the law to the established facts.  We disagree and, without delving into the
merits of Hardwicke=s claims, conclude that the trial court=s denial of his request for a temporary injunction,
on the evidence presented to that court, did not reflect an abuse of its
discretion. 

Public
Use








Hardwicke=s primary argument is based on the constitutional
provisions limiting the exercise of the power of eminent domain to the taking
of property for public use.  U.S. Const.
amend. 14; Tex. Const. art. I '17.  He argues
the evidence shows the property will be sold to the developer for private,
rather than public, use.  The public use
requirement was addressed by the supreme court in Davis v. City of Lubbock,
326 S.W.2d 699 (Tex. 1959), which involved constitutional challenges to a
statute allowing use of the power of eminent domain for urban renewal.  Id. at 701.  The plaintiffs argued provisions allowing
private development of property acquired by condemnation did not satisfy the
public use requirement.  Id. at
703-04.  The court held the primary
purpose of the statute, to clear slum and blighted areas, provides a public use
for property taken pursuant to its terms. 
Id. at 709.  Despite
differences between the Act and the urban renewal statute examined in Davis,
Hardwicke has not persuasively distinguished the Davis opinion=s analysis, and we find it applicable here.  See also Housing Authority of Dallas v.
Higginbotham, 143 S.W.2d 79, 84, 135 Tex. 158 (1940) (noting court has
adopted liberal view of what constitutes public use).

The trial court had before it evidence of the City Council=s findings supporting the creation of the
reinvestment zone, and evidence concerning the condition of the North Overton
area.  That evidence included a June 2002
consultant=s report on the feasibility of tax increment
financing to encourage redevelopment in the area.  The report described the North Overton
neighborhood as an area in distress, characterized by declining population,
high vacancy rates, high crime rates and properties in poor condition, with
little to attract anyone to the neighborhood other than extremely low values
and rents.








Hardwicke relies on a statement in the City=s Resolution No. 2002-RO259, by which it adopted tax
increment financing policies, that the Act Aallows the acquisition of private property for
private use in a [tax increment reinvestment zone] project, in accordance with
the redevelopment policies of the City . . . .@  He contends
the statement is contrary to the Act and states a City policy of using its
eminent domain power to acquire private property for private use.  The City argues that, in its context, the
statement does not indicate a policy of acquiring private property by
condemnation in violation of constitutional requirements.  Regardless whether the resolution=s language concerning what the Act allows is
accurate, there was ample evidence to permit the trial court to conclude that
the City=s taking of Hardwicke=s property was for a public use.  Craig Farmer, the City=s managing director of planning and transportation,
testified that the economic viability of the North Overton redevelopment
depended on the aggregation of properties in some areas of the zone to permit
large-scale projects.  Farmer also
testified that the location of Hardwicke=s property made it appropriate that it be included
within one of the aggregated areas.  

Hardwicke also refers to paragraph 2.1 of the City=s Resolution No. 2002-RO258, establishing
redevelopment policies for the City, which states:

The purchase and aggregation of parcels is the
responsibility of the developer(s). The City does not intend to use the power
of eminent domain to purchase property for private use, unless the City Council
agrees that special circumstances exist.

 

On this
record, Farmer=s testimony concerning the location of Hardwicke=s property, coupled with his testimony concerning the
infrequent occasions on which the City Council 








had approved
exercise of its right of eminent domain in the North Overton zone,  also provides evidence from which the trial
court could reasonably have inferred the existence of the Aspecial circumstances.@

Another holding of Davis is applicable here.  Intervenors in Davis complained, as
does Hardwicke, that clearance of blighted property could not be used to
justify taking of their property because the specific structure which the city
sought to condemn was not blighted or substandard.   326 S.W.2d at 710.  The court there followed the Auniform holdings of the highest courts of other
states@ that use of eminent domain to eliminate slums
requires cities to deal with areas rather than individual properties.  Id. 
In City of Arlington v. Golddust Twins Realty Corp., 41 F.3d 960,
966 (5th Cir. 1994), the Fifth Circuit Court of Appeals held the acquisition of
an individual property that is Areasonably essential@ to successful completion of a public project is an
acquisition for a public use.  Id.
at 966.  There was evidence at the
hearing from which the court reasonably could conclude that acquisition of
Hardwicke=s property was necessary to carry out the
redevelopment plan approved by the City.  


AUnable to Agree@ Requirement








Hardwicke
also points out the requirement in the condemnation statute that a petition for
condemnation state the condemnor and the landowner Aare unable to agree on the damages.@  Tex. Prop. Code Ann.
' 21.012(b).  He
contends the City will be unable to meet that requirement because record
evidence conclusively shows the City did not engage in negotiations with him or
make any bona fide effort to reach agreement with him, leaving all negotiations
to the developer.  As noted, though, the
record contains the City=s December 2003 letter to Hardwicke, with its accompanying
appraisal report, and the City=s January 2004 letter, extending offers to acquire his
property for the appraised value. 
Hardwicke filed his declaratory judgment proceeding shortly after
receipt of the January letter.  When he
submitted his brief on appeal, Hardwicke did not have the benefit of our
supreme court=s recent opinion in Hubenak v. San Jacinto Gas
Transmission Co., 47 Tex. Sup. Ct. J. 767, 2004 WL 1490396 (Tex. July 2,
2004).  Based on the court=s discussion there of the evidence necessary to meet the Aunable to agree@ requirement, the trial court would have been justified in
concluding the requirement was satisfied in this case.  Moreover, the record before us does not
demonstrate that Hardwicke presented his contention based on the Aunable to agree@ requirement to the trial court before its denial of the
temporary injunction.  The contention
cannot, therefore, constitute a basis for concluding the trial court abused its
discretion.  See Sherrod, 819
S.W.2d at 205.

Unlawful Delegation








Hardwicke argues also that the temporary injunction evidence shows the
City improperly has delegated authority to the developer, supporting his
probable right of recovery to a declaratory judgment.  He points to evidence that:  the City=s policies state selection of properties for
redevelopment and acquisition of properties for redevelopment are the
responsibilities of the developer; McCanton Woods requested the City initiate
condemnation proceedings against him; the City=s agreement with McCanton Woods for condemnation of
Hardwicke=s property calls for the developer to bear all the
expenses related to the condemnation; the City may convey condemned property to
the developer without knowing exactly what use will be made of the parcel; and
there is no written agreement between the City and McCanton Woods generally
setting out their obligations with respect to redevelopment of the North
Overton area.  Hardwicke cites cases
holding that a municipality=s exercise of the power of eminent domain is a
legislative act, Luby v. City of Dallas, 396 S.W.2d 192, 197
(Tex.Civ.App.BDallas 1965, writ ref=d n.r.e.), and that a municipality may not delegate
its governmental functions to a private party without constitutional authority,
Pittman v. City of Amarillo, 598 S.W.2d 941, 945 (Tex.Civ.App.B Amarillo 1980, writ ref=d n.r.e.).  He
also cites FM Properties Operating Co. v. City of Austin, 22 S.W.3d 868
(Tex. 2000), in which the supreme court found that a section of the Texas Water
Code worked an unconstitutional delegation of legislative power to private
landowners.  Hardwicke argues that the
evidence shows the developer has Aabsolute discretion to determine prices to be offered
for . . . properties, but knowing that he may rely on the City through its
purported eminent domain powers if the landowners do not accept the private
developer=s offer.@  He further
contends the City exercises only Aprocedural involvement,@ initiating the condemnation proceeding in its name
at the developer=s request.  








We cannot agree the trial court was restricted, at this interlocutory
stage, to Hardwicke=s view of the evidence.  The record also shows the City had the
property appraised by an independent appraiser, and that its offer to Hardwicke
was in the amount of that appraisal.  The
appraiser testified he was given no instructions concerning the amount of his
appraisal.  The record reflects City
Council consideration and approval of the proposed condemnation before its
authorization of the City=s execution of the agreement with McCanton
Woods.  Delbert McDougal testified he
expected the City would convey the property to McCanton Woods promptly after
the condemnation, but the agreement between the City and the developer requires
the developer to use the property in implementing the project plan approved by
the City.  On this record, the trial
court=s failure to find the City unlawfully delegated its
eminent domain power to McCanton Woods was not an abuse of discretion.          

Arbitrary Boundaries








Next we address Hardwicke=s contention that the boundaries of the redevelopment
zone were determined in an arbitrary and capricious manner, as shown by the
inclusion of numerous properties that are not unproductive, underdeveloped or
blighted, and for which there are no apparent current plans for
redevelopment.  At the hearing, Hardwicke
focused on the inclusion in the zone of properties on the north side of
Broadway.  In his brief, Hardwicke cites Malcomson
Rd. Util. Dist. v. Newsom, No. 01-00-1163-CV, 2003  WL 21299939 (Tex.App.BHouston [1st Dist] June 5, 2003, no
pet.)(memorandum opinion).  That opinion
describes arbitrary and capricious action, in the condemnation context, as  Awillful and unreasoning action, action without
consideration and in disregard of the facts and circumstances.A  It also
quotes Ludewig v. Houston Pipeline Co., 773 S.W.2d 610, 614 (Tex.App.BCorpus Christi 1989, writ denied), to the effect that
Awhen there is room for two opinions, an action cannot
be deemed arbitrary when it is exercised honestly and upon due consideration,
regardless how strongly one believes an erroneous conclusion was reached.@ Malcomson, slip op. at 7.  

The record here contains a map of the reinvestment zone which shows it
is a rectangular area with a single inset to avoid passing the boundary through
the middle of a building.  The zone is
bounded on three sides by multi-lane commercial thoroughfares and on the east
by the downtown area.  With respect to
the inclusion of properties on the north side of Broadway, Craig Farmer
testified to the need to authorize improvements to utilities serving the blocks
adjoining Broadway to the north and improvements to the streets that intersect
Broadway.  He testified he felt it Aabsolutely@ was necessary to include the properties fronting
Broadway in the reinvestment zone.  On the
basis of that evidence, the court well could have concluded that the City=s configuration of the reinvestment zone was not an
arbitrary or capricious action.                              

Designation as Historical Property








Hardwicke=s pleadings seek a declaration that his property has
historical significance entitling it to be designated an historical
property.  At the temporary injunction
hearing, Hardwicke testified to his research concerning the history of the
house located on the property.  His
research revealed that the house was constructed in 1910 by W. D. Benson, an
early-day and prominent Lubbock lawyer. 
It was located originally in what is now the downtown area of Lubbock
and was moved to the lot on 9th Street in 1948 by a later
owner.  Hardwicke described the
architecture of the house as characteristic of New England construction not
typically seen in this part of the country. 
The evidence also included a photograph of the house, apparently taken
within a few years of its construction. 
Hardwicke had located the photograph in Texas Tech=s Southwest Collection, which includes information on
the Benson family.  He testified the
house should be saved.[9]  

In Seaborg Jackson Partners v. Beverly Hills Sav., 753 S.W.2d
242, 244-45 (Tex.App.BDallas 1988, no writ), the court cited the
certification of property by the United States Department of Interior as an
historical structure as conclusive proof of its uniqueness and of the
inadequacy of a remedy at law for its loss. 
Hardwicke cites us to no authority, though, establishing that the trial
court has the power through a declaratory judgment to determine that a property
is entitled to designation as an historical property.  Moreover, even if the court had such power,
the evidence that the structure had been moved from its original location and
divided into four apartments would support a conclusion that Hardwicke has not
shown a probable right to such a declaration, against a claim of abused
discretion.      

CONCLUSION
AND DISPOSITION








Based on the evidence presented, the trial court did not abuse its
discretion in failing to find Hardwicke demonstrated a probable right, on final
trial, to the declaratory relief his pleadings seek.  On appeal, Hardwicke also contends he
demonstrated he faces imminent and irreparable injury without a temporary
injunction. The City contends the condemnation statutes provide him an adequate
remedy.  We need not address those contentions
because of our conclusion on the probable right to relief element.  We overrule Hardwicke=s sole issue and affirm the order of the trial
court.  We also lift our order staying
condemnation proceedings.

 

                                                                                    James T. Campbell

         Justice

 

 

 

 

 











[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of
Appeals, sitting by assignment.





[2]The North Overton area generally lies between the downtown
center of Lubbock and the campus of Texas Tech University, and is bounded
generally by Broadway on the south, University Avenue on the west, Fourth
Street on the north and Avenue Q on the east. 





[3] Subsequent section references are to the Texas Tax
Code Annotated (Vernon 2002), unless otherwise noted.





[4]A key feature of the Act is the method used to
finance the public works.  See City
of El Paso v. El Paso Community College Dist., 729 S.W.2d 296 (Tex.
1986).  Under the Act, the taxable value
of real property in the zone is determined at the time of the zone=s creation. '' 311.011(c)(7), 311.012(c).  During the existence of the reinvestment
zone, taxes collected on any increase in value resulting from redevelopment are
deposited in a tax increment fund. ' 311.013.  This
fund is used to pay public project costs, including the cost of public works. ' 311.002(1).





[5]In its ordinance designating the North Overton area
as a reinvestment zone, the Lubbock City Council also stated its findings that,
inter alia, the area is Aunproductive, underdeveloped or blighted@ within the meaning of article VIII, section 1-g(b)
of the Texas Constitution, and impairs the City=s growth or constitutes an economic or social
liability because of the number of deteriorated or deteriorating structures,
faulty lot layout, and deterioration of site or other improvements.  See ' 311.005(a)(1); Op. Tex. Att=y Gen. No. JC-0152. 






[6]Our description of the relief Hardwicke seeks comes
from his second amended petition, filed February 25.  His prior petitions are not in the record
provided us.





[7]Hardwicke=s brief states his request for an anti-suit
injunction has been rendered moot because the trial court permitted the City to
file its condemnation proceeding as a counterclaim.  For purposes of this appeal, we view the
status quo Hardwicke seeks to preserve as his possession of his property.





[8]A trial court may, but need not, file findings of
fact and conclusions of law with respect to an interlocutory order. Tex. R.
App. P. 28.1.





[9]To his attorney=s question ADo you have any desire to preserve this house because
of the - - what you believe to be the historical value or significance of this
house?@ Hardwicke answered AWell, yes. I think the house should be saved. Yes, I
do.@